UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Kevin Felster,　　　　　　　　　　　　　Case No. 17-49577-MBM
　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　　　　　Debtor.　　　　　　　　　　　Hon. Marci B. McIvor
_____/

## OPINION SUSTAINING DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY CARRINGTON MORTGAGE SERVICES, LLC (CLAIM NO. 3)

This matter came before the Court on debtor Kevin Felster's objection to the proof of claim filed by Carrington Mortgage Services, LLC ("Carrington Mortgage"). That claim (claim no. 3) was filed as a secured claim in the amount of $150,632.94. A hearing on the objection was held on February 7, 2018. For the reasons set forth in this Opinion, Debtor's objection to the claim is sustained. Carrington Mortgage's claim is a general unsecured claim.

### Factual Background

On August 25, 2002, debtor Kevin Fester and his wife, signed a mortgage in the amount of 196,416.94 in favor of Citifinancial, Inc. The mortgage was on the couple's residence, located at 5235 Welch Road, Emmett, Michigan. (Creditor's Exhibit 1).

On September 12, 2001, the mortgage was recorded with the St. Clair County register of deeds.

Citifinancial serviced the mortgage until 2013.

In 2013, Green Tree became the servicer on the mortgage. (Deposition of Diego Goya at 8, hereinafter "Goya Dep. at ___"). At some point, Green Tree became known as Ditech. (Goya Dep. at 8).

In November, 2015, Debtor began seeking a mortgage loan modification from Ditech. (Deposition of Kevin Felster at 10, hereinafter "Felster Dep. at ___").

The mortgage modification process was confusing because Citifinancial and Ditech had different underwriting standards and were computing Debtor's income differently. Debtor's request for a modification was denied twice. The problem seemed to be centered on how Citifinancial was computing Debtor's income. (Felster Dep. at 10-13).

On July 18, 2016, Debtor contacted Citifinancial by telephone to request a payment history on the mortgage. According to a log of customer contacts kept by Citifinancial (known as a "remedy ticket"), Debtor requested a full payment history and the history was sent out on that same day. (Creditor's Objection to Claim Ex. 7; Goya Dep. at 18).

In August, 2016, Debtor contacted Citifinancial "to find out what their interests were in my mortgage" and Debtor was told that Citifinancial had no interest because the mortgage "was sold to Ditech in April of 2013." (Felster Dep. at 14).

On August 17, 2016, Debtor sent a fax to Citifinancial to "have Citifinancial, Inc. removed as the lien holder on the property." (Creditor's Ex. 5).

On August 23, 2016, Citifinancial sent a 12 page fax to Verdugo, the third-party vendor used by Citifinancial for releasing liens (Creditor's Ex. 5; Goya Dep. at 13). The fax was prepared by Citifinancial employee Deimi Sanchez. The subject on the fax cover sheet was "TITLE RELEASE FELSTER." Included in the fax was a copy of Debtor's fax to Citifinancial requesting that Citifinancial be removed as lien holder, a copy of the original mortgage, and a five page payment history on the account. The payment history covered a period from August 15, 2001 through April 30, 2013, the date on which the loan servicing was transferred to Greentree/Ditech. (Creditor's Ex. 5; Goya Dep. at 14-15).

On September 2, 2016, a Certificate of Discharge was signed by Citifinancial. (Creditor's

Ex. 6). The discharge was recorded with the St. Clair County register of deeds on September 13, 2016.

In his deposition, Mr. Goya explained that the discharge was prepared based on information sent by Citifinancial to Verdugo. (Goya Dep. at 14). Further, Mr. Goya stated that "[i]n reviewing the business records, it was an oversight on the processer [Sanchez] to submit the package to Verdugo to release the lien.. . . The processor, Deimi, did not see or it was an oversight where it was a sold payoff." (Dep. at 17).

Debtor continued to make monthly mortgage payments through June, 2017.

In June, 2017, Debtor met with counsel regarding filing a voluntary chapter 7 bankruptcy petition. While preparing to file that petition, Debtor's counsel discovered that Debtor's mortgage had been discharged.

On June 29, 2017, Debtor filed a chapter 13 bankruptcy petition. Debtor listed his residence on schedule A at a value of $120,000. Schedule D lists no secured debts. Schedule F lists a "discharged mortgage" to Ditech with a balance "unknown." Debtor's SOFA states that in the 90 days preceding the filing of the petition (April through June), Debtor paid Dietch $3,300.

On October 3, 2017, Citifinancial assigned its interest in the mortgage to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust. (Ex. 6). It appears that movant Carrington Mortgage Services, LLC is the mortgage servicer for Wilmington.

On October 17, 2017, Wilmington filed a proof of claim in the amount of $150,632.94, secured by a mortgage on Debtor's residence (claim No. 3).

3

On October 25, 2017, Debtor filed an objection to Wilmington's proof of claim. Debtor asserts that the mortgage has been discharged.

On November 10, 2017, Carrington Mortgage Services, as servicer for Wilmington, filed a Response to Debtor's Objection to Claim. Carrington asserts that "the discharge is fraudulent and the mortgage at issue was never paid off by Debtor." (Response at ¶ 2).

On February 7, 2018, the Court held a hearing on Carrington's Objection to Proof of Claim.

## **Analysis**

Under § 502(a) of the Bankruptcy Code, proofs of claim filed under section 501(a) are deemed allowed unless an objection is filed. The proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *In re Consolidated Pioneer Mortg*., 178 B.R. 222 (B.A.P. 9th Cir. 1995). Once an objection is filed, the objecting party carries the burden of going forward with evidence concerning the validity and amount of the claim. *In re Allegheny Int'l, Inc*., 954 F.2d 167 (3d Cir. 1992). If the objector then produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of going forward shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id*.

In the present case, Carrington Mortgage filed a claim in the amount of $150,632.94 secured by a mortgage on Debtor's residence. Attached to the proof of claim is a copy of the mortgage, signed by Debtor. The proof of claim and the mortgage constitute *prima facie* evidence of the claim, thus the burden of proof is on Debtor as the objecting party. Debtor's objection states that the mortgage has been discharged and, therefore, Carrington Mortgage's secured claim should be disallowed. Debtor has produced a valid and duly recorded discharge

4

of mortgage. Carrington admits that the discharge was prepared and filed by Verudgo on behalf of Citifinancial. The testimony of Diego Goya is that the mortgage was discharged as a result of a mistake on the part of Citifinancial. Citifinancial should have ascertained that there was a significant balance owed on the mortgage and a request for a discharge should never have been sent to Verdugo.

The discharge of Debtor's mortgage arose from a mistake made by Citifinancial, its employees, or third party contractors. Carrington does not argue that such a mistake warrants relief under the law. The rules regarding the recording and discharge of interests in property and liens on property are well established. In this case, both the lien and the discharge were duly recorded. Carrington fails to cite any authority which would require this Court to set aside the mortgage discharge. Absent any authority for setting aside the discharge, the Court finds that the duly recorded discharge is valid.

To the extent that Carrington asserts that the discharge arose from some type of fraudulent conduct by Debtor, the record does not support that assertion. Debtor was attempting to negotiate a mortgage modification from Citifinancial and its servicer, Ditech. That process was slow and confusing due to the business practices of the lenders. It appears to the Court that Debtor tried diligently to submit all of the information requested by Citifinancial and Ditech, and despite Debtor's best efforts, could not satisfy one or both of those entities. It was only after being informed by Citifinancial that Citifinancial had no interest in Debtor's property (because its interest was transferred to Ditech) that Debtor sought a "release" of Citifinancial's lien. This Court cannot fathom how those facts could give rise to even the inference of fraud by Debtor.

In the present case, there is no basis in fact or in law for setting aside the discharge of

5

mortgage on Debtor's property. Debtor's objection to Carrington's proof of claim is, therfore, sustained. Carrington Mortgage's claim is a general unsecured claim in the amount of $150,632.94.

## Conclusion

For the foregoing reasons, Debtor's Objection to Carrington Mortgage Services, LLC's Proof of Claim (Claim No. 3) is sustained. Claim No. 3 is allowed a general unsecured claim in Debtor's chapter 13 bankruptcy in the amount of $150,632.94.

**Signed on February 15, 2018**

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge